PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | CASE NO.  4:19CV2654 |
| Plaintiff, | ) ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | |
| RAE ARC INDUSTRIES, INC., *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 28] |

Pending is Plaintiff West Bend Mutual Insurance Company's Motion for Summary

Judgment (ECF No. 28).[1]  The Court has been advised, having reviewed the record, the parties'

briefs, and the applicable law.  For the reasons that follow, the Court denies the motion.

### I. Stipulated Facts

The stipulated facts[2] are as follows:

1.  Plaintiff issued to "Rae Arc Industries, Inc. and The Carousel Center" a general

liability policy, Policy No. A120820 01, which policy was effective February 19, 2017 to

---

[1]  During the Case Management Conference, the parties contemplated filing cross-motions for summary judgment.  *See* Case Management Plan (ECF No. 18) at PageID #: 445-46, ¶ 16.  Defendants Rae Arc Industries ("Rae Arc") and The Carousel Center subsequently did not file for summary judgment.

[2]  *See* Joint Stipulation of Facts (ECF No. 27).

(4:19CV2654)

February 19, 2018 (hereinafter "the West Bend Policy"). ECF No. 27-1 is a certified copy of the West Bend Policy, including the Affidavit of Ashley Bonin.

2. Included in the West Bend Policy is an Endorsement entitled "EXCLUSION – NAMED DRIVER", which was signed by Shannon Arcade, as a representative of the first named insured. ECF No. 27-2 is a copy of this signed Endorsement.

3. *Law Office of Shirley J. Smith, LLC, Administrator of the Estate of Bradley A. Huffman, Deceased v. RaeArc Industries, Inc., et al.*, No. 2019 CV 01562 (Mahoning Cty. Common Pleas Ct. filed July 30, 2019) has been filed in state court ("the underlying litigation"). It asserts injury claims on behalf of the Estate of Bradley A. Huffman against various defendants, including Rae Arc Industries, Inc., The Carousel Center, and Sharita Williams. The claims arise out of an incident that occurred on July 30, 2017. ECF No. 27-3 is a copy of the Complaint filed in the underlying litigation.[3]

4. Defendants Rae Arc and/or The Carousel Center are in the business of providing support services for people with developmental disabilities and mental health issues. The

---

[3] Plaintiff in the underlying litigation (1) filed a Notice of Voluntary Dismissal of Defendant The Carousel Center pursuant to Ohio R. Civ. P. 41(A)(1)(a) in June 2021 and (2) has settled all claims against Defendant Sharita Williams. Last month, the state court denied the parties' cross-motions for summary judgment because there remain genuine issues of material fact as to the negligence, negligence *per se*, and vicarious liability claims. The court also denied Rae Arc's motion for summary judgment on Plaintiff's claims of premises liability and for punitive damages because there remain genuine issues of material fact. *See Law Office of Shirley J. Smith, LLC, Administrator of the Estate of Bradley A. Huffman, Deceased v. RaeArc Industries, Inc., et al.*, No. 2019 CV 01562 (Mahoning Cty. Common Pleas Ct. August 3, 2021).

(4:19CV2654)

services provided by Rae Arc and The Carousel Center and their employees/agents include

residential support services and care.

5.  On July 30, 2017, decedent Bradley Huffman (age 69) resided at 851 S. Canfield-Niles

Road, Austintown, Ohio.

6.  On July 30, 2017, Sharita Williams was employed by Rae Arc and/or The Carousel

Center as a care giver providing services to Huffman.

7.  On July 30, 2017, Sharita Williams was operating her private vehicle, owned by her,

in the driveway of the Huffman residence at 851 S. Canfield-Niles Road, Austintown, Ohio.

8.  The automobile being operated by Sharita Williams struck Bradley Huffman.[4]

9.  The Complaint filed in the underlying litigation alleges injuries and damages as a

result of this July 30, 2017 accident.

## II.  Introduction

Plaintiff seeks a declaratory judgment that it is not required to defend nor indemnify Rae

Arc for the claims of the Estate of Bradley A. Huffman.  Plaintiff argues that coverage for the

claims in the underlying litigation is precluded by certain exclusions contained in the West Bend

Policy.  The Court concludes, however, that (1) Plaintiff has a duty to defend Rae Arc in the

---

[4]  "Mr. Huffman sustained a fractured ankle as a result of the impact and was
transported to St. Elizabeth Hospital for treatment, where he remained until August 17,
2017.  Thereafter, Mr. Huffman received care and treatment at Select Specialty Care
and/or Caprice Health Center until his death on February 6, 2018."  *Law Office of Shirley
J. Smith, LLC, Administrator of the Estate of Bradley A. Huffman, Deceased v. RaeArc
Industries, Inc., et al.*, No. 2019 CV 01562 (Mahoning Cty. Common Pleas Ct. August 3,
2021) at 1.

3

(4:19CV2654)

underlying litigation and (2) resolution of the question of Plaintiff's duty to indemnify is

precluded by unanswered factual questions.

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of genuine dispute.  An opposing party may not simply rely on

its pleadings.  Rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980

F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-moving party when deciding whether a genuine issue of

4

(4:19CV2654)

material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.* (citing *Anderson*, 477 U.S. at 252).

### IV.  Analysis

The Supreme Court of Ohio has held that "[a]n insurer's duty to defend is broader than and distinct from its duty to indemnify."  *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 189 (2006).  Once it has been found that an insurer must defend even one claim within an underlying complaint, it must defend all other claims therein, regardless of their potential coverage from the insurance policy.  *Id.*  Ohio has generally adopted a system of notice pleading,

5

(4:19CV2654)

*see* Ohio R. Civ. P. 8, and the Supreme Court of Ohio has stated, "the pleadings alone may not provide sufficient factual information to determine whether the insurer has an obligation to defend the insured." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180 (1984).[5]  Therefore, the test of the duty to defend is whether any of the underlying claims "potentially or arguably" fall within the "scope of the allegations" of the underlying complaint. *Id.*

The pleadings may be broad in scope and the duty to defend attaches until such a point when no claim may even potentially or arguably be covered.  The question of a duty to defend or indemnify is then answered by a comparison of the breadth of the pleadings and the coverage of the policy.  If they overlap to a sufficient degree that a covered claim could arise, then the insurer must defend.  The question of indemnity would then await the resolution of the relevant litigated claims.  A two-step process has been helpful in such analyses:  "(1) determine the scope of the insurance policy; and (2) assess whether the allegations fall within the scope of that policy." *Fortney & Weygandt, Inc. v. Am. Manufacturers Mut. Ins. Co.*, No. 1:04CV48, 2012 WL 13020177, at *5 (N.D. Ohio Aug. 31, 2012) (Oliver, C.J.).  In applying this test to the West Bend Policy in the case at bar, it becomes apparent that there is at least some potential for the underlying litigation to resolve in such a way as to give rise to a covered claim.  For this reason, Plaintiff must defend the state court action and the within motion cannot be granted.

---

[5]  More recently, the Seventh District Court of Appeals of Ohio expressly rejected "plausibility pleading" in the extension of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to Ohio civil procedure jurisprudence. *Bahen v. Diocese of Steubenville*, No. 11 JE 34, 2013 WL 2316640, at *3 (Ohio App. 7th Dist. May 24, 2013).

(4:19CV2654)

### A.    Scope of the West Bend Policy

The West Bend Policy (ECF No. 27-1) is a Commercial Package Policy which contains various different coverages.  It contains three relevant coverage parts:  Business Auto Coverage, Commercial General Liability ("CGL") Coverage , and Commercial Liability Umbrella Coverage.  The Business Auto Coverage part contains an endorsement with a named driver exclusion stating "[t]his insurance does not apply to any loss, damage and/or liability caused by the ownership, maintenance, or use of a covered auto while being driven or operated by the following named driver:  Sharita Williams."  ECF No. 27-2.  The parties do not dispute that this exclusion precludes any coverage for the underlying litigation.  It is also undisputed that this named driver exclusion applies only to the Business Auto Coverage part.  The Commercial Liability Umbrella Coverage part is subject to a separate named driver exclusion (ECF No. 27-1 at PageID #: 515) which would also preclude coverage for a motor vehicle driven by Sharita Williams.  This separate exclusion differs from the one applicable to the Business Auto Coverage part in that it is contingent upon underlying coverage.[6]  Although much discussion is given to the Commercial Liability Umbrella Coverage part by the parties, it only applies to the extent that coverage is available elsewhere in the West Bend Policy (ECF No. 27-1).  For this reason, the Commercial Liability Umbrella Coverage alone would not be dispositive of the Plaintiff's duty to defend.

---

[6]  The named driver endorsement states:  "Except to the extent coverage is available to you in the underlying insurance, this insurance does not apply to any motor vehicle that would otherwise have been insured while being operated by:  Sharita Williams."  ECF No. 27-1 at PageID #: 515.

(4:19CV2654)

The CGL Coverage part of the West Bend Policy is not subject to any such specific exclusion.  It does, however, include a broad auto exclusion which will be subject to further discussion below.  Unanswered factual questions preclude any current resolution as to whether this exclusion applies.  Despite Plaintiff's arguments to the contrary,[7] the exclusion cannot yet be applied to cut off all potential coverage in the CGL Coverage part.

The CGL Coverage part of the West Bend Policy provides a broad coverage statement subject to a number of exclusions.  The coverage form states:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.  Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

ECF No. 27-1 at PageID #: 485.

---

[7] Plaintiff cites two distinguishable cases.  In *Lehrner v. Safeco Ins/Am. States Ins. Co.*, 171 Ohio App.3d 570 (2007), the exclusion does not contain the "owned or operated by or rented or loaned to any insured" language of the West Bend Policy, and instead excludes coverage arising out of the use of "an auto."  *Id.* at 580.  The policy language in *Kallaus v. Allen*, No. 07CA0153, 2008 WL 4416038 (Ohio App. 5th Dist. Sept. 30, 2008), does contain the same relevant language as the West Bend Policy, but the operator of the "auto" is the named insured on the policy and so is clearly "any insured."  *Id.* at *3.

8

(4:19CV2654)

It also contains an automobile exclusion which states:

### 2. Exclusions

This insurance does not apply to:

* * *

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to *any insured*. Use includes operation and "loading and unloading."

This exclusion applies even if the claims against *any insured* allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to *any insured*.

ECF No. 27-1 at PageID #: 486; 488 (italics added).

Under Ohio law, the interpretation of an insurance policy is a question of law for the court to decide. *Napier v. Ickes*, 140 N.E.3d 137, 145 (Ohio App. 5th Dist. 2019). As with other contracts, the court will look to the policy as a whole and apply the plain meaning of its language in order to honor the intent of the parties' agreement. *Id.* at 145-46. The question for the Court is:  Under what circumstances is an employee such as Sharita Williams considered "any insured" for the purposes of the automobile exclusion above?  The following language in the CGL policy speaks to the issue:

(4:19CV2654)

### SECTION II – WHO IS AN INSURED

* * *

**2.** Each of the following is also an insured:

    **a.** Your "employees" . . ., but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

ECF No. 27-1 at PageID #: 493.

The policy language above states that the CGL auto exclusion applies for liability arising out of an occurrence where an "auto" was "owned or operated by or rented or loaned to any insured." ECF No. 27-1 at PageID #: 488.  Defendant claims that Sharita Williams might be an insured, depending upon whether she was acting within the scope of her employment during the occurrence.[8]  The weight of Defendants' opposition to the within motion for summary judgment hangs upon the contention that this is a material issue of fact.  Plaintiff argues that an employee, such as Sharita Williams, is an "insured" for the purposes of the CGL automobile exclusion regardless of unanswered factual issues.  It argues that because Williams could be insured for her caregiving services or other potential actions, she must qualify as an insured regardless of her scope of employment at the time of the occurrence.  This is not the case.  The clear language of the West Bend Policy states that employees are "an insured . . ., but only for acts within the scope

_____

[8]  Also, Williams might be an insured if her personal vehicle were in some way "rented or loaned" to Rae Arc in some capacity, as they are a named insured and therefore clearly constitute "an insured" at all times.  Such a fact is likely to be contingent upon whether Williams was acting within the scope of her employment or related to the conduct of the business in any way.  Suffice to say, none of these facts are established as a matter of law at this time.

(4:19CV2654)

of their employment by [Rae Arc] or while performing duties related to the conduct of [Rae Arc's] business." ECF No. 27-1 at PageID #: 493.  It is not established, either in this litigation or the underlying litigation, whether Sharita Williams may have been acting within the scope of employment.  As long as that factual issue remains unresolved, application of the CGL auto exclusion must also remain in limbo.

Courts must look to whether an employee was within the scope of their employment to determine whether they are "an insured."  See *Reese v. Fid. & Guar. Ins. Underwriter*, 158 Ohio App.3d 696, 821 N.E.2d 1052, 1057 (2004) ("[The employee] was on her way to work when she was injured; therefore, she is not an insured under [the insurance] policy and is not entitled to uninsured coverage.").  This analysis is applicable to automobile exclusions within CGL policies. *See, e.g.*, *Sprinkles v. Associated Indem. Corp.*, 188 Cal. App.4th 69, 81 (2010) (An employee driving his car to work that he also used to visit job sites constituted "duties related to the conduct of the [employer's] business," thereby triggering the automobile exclusion in the CGL policy).  In *Barge v. Jaber*, 831 F. Supp. 593 (S.D. Ohio 1993), an automobile exclusion in a CGL policy was triggered because a vehicle was determined to have been "rented or loaned to any insured." *Id.* at 597.  The CGL policy stated that the exclusion applied for liability "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or water craft owned or operated by or rented or loaned to any insured. . . ." *Id.*  The court reasoned that since the truck was loaned to the employee within the scope of his employment, it had been functionally loaned to an insured, and the auto exclusion applied. *Id.* at 601.  In *21st Century Ins. Co. v. Doubrava*, No. 97903, 2012 WL 3041178 (Ohio App. 8th Dist. July 26, 2012), an Ohio

11

(4:19CV2654)

appellate court looked to whether a worker was in the scope of his employment in order to evaluate the applicability of an insurance exclusion.  The policy contained an exclusion precluding coverage of employee-owned vehicles.  *Id.* at *2.  If the employee's vehicle qualified as a "temporary substitute vehicle," the exclusion would no longer apply, and the employee would qualify as "an insured."  *Id.* at *3.  For the purpose of such a definition, the court looked to scope of employment and the use of the vehicle at the time of the occurrence.  *Id.*  The court found that the employee was acting within the scope of his employment, but that his vehicle was not serving to replace a covered company vehicle.  Therefore, the employee did not qualify as an insured, and the employee-owned vehicle exclusion was applicable.  *Id.*

When a corporation is the named insured on a policy, employees are "an insured" on a context-dependent basis.  The CGL coverage part of the West Bend Policy clearly states that employees are insureds only when they are acting within the scope of their employment or performing duties related to the conduct of Rae Arc's business.  *See* ECF No. 27-1 at PageID #: 493.  Ohio law and the principles of contract construction are clear on this issue.  In order to know if Sharita Williams is "any insured," we must know whether she was acting within the scope of her employment.

This inquiry is important because the auto exclusion in the CGL coverage part depends on it.  The West Bend policy states that there will be no coverage for liability arising out of the use of an auto that is "owned or operated by or rented or loaned to any insured."  ECF No. 27-1 at PageID #: 488.  The parties agree that Sharita Williams was an employee of Rae Arc and that she was driving her own personal vehicle when the accident which injured Bradley Huffman

12

(4:19CV2654)

occurred.  *See* ECF No. 27 at ¶¶ 6, 7.  It is not stipulated that Williams was acting within the

scope of her employment at the time of the occurrence.  In fact, it remains a key matter of dispute

in the underlying litigation.  Plaintiff argues that "coverage is excluded because West Bend

always intended to exclude and never agreed to provide any coverage for any claims, bodily

injury, property damage, or other liability that would arise in any fashion from the operation of an

automobile by Sharita Williams, an employee of Defendants."  Reply Memorandum (ECF No.

30) at PageID #: 858.  If this were the case, then why did the comprehensive named driver

exclusion not apply to the CGL coverage part?  It is the language of the West Bend Policy, not

the latter protestations of the attorneys, which speaks to the true intent of the parties.

> **B.**    **Do the Allegations of the Complaint in the Underlying Litigation Fall Within the Scope of the West Bend Policy?**

The complaint in the underlying litigation (ECF No. 1-2) sets forth multiple theories of

liability.  It contains claims of negligence, negligence *per se*, premises liability, vicarious

liability, and "recklessness, and/or willful and/or wanton misconduct . . . warranting an award of

punitive damages."  ECF No. 1-2 at PageID #: 357, ¶¶ 45-46.  If even one of these claims is

potentially or arguably covered by the West Bend Policy, it would be entirely dispositive of

Plaintiff's duty to defend.  The claim of vicarious liability, however, is precluded because it

would require Sharita Williams to have been in the scope of her employment, which would

trigger the CGL auto exclusion for the claim.  A separate exclusion in the West Bend Policy for

non-compensatory damages precludes coverage for the claim of "recklessness, and/or

13

(4:19CV2654)

willfuland/or wanton misconduct." *See* ECF No. 27-1 at PageID #: 705; 803.[9]  The claims of

negligence and negligence *per se* could be precluded if they flow through Williams' actions as an

employee.  They could also flow through a theory of premises liability.  In short, the potential for

a covered claim in the underlying litigation is contingent upon the theory of premises liability

contained in the complaint (ECF No. 1-2).

      While the factual allegations in the complaint in the underlying litigation (ECF No. 1-2)

are scant on details related to premises liability, this is not relevant to the Ohio standard of

evaluating a duty to defend.  There is nothing at this time to preclude an outcome in the

underlying litigation in which Rae Arc is liable under a theory of premises liability and Sharita

Williams was acting outside of the scope of her employment at the time of the occurrence.

Given that such a claim is still possible, Plaintiff must defend the entire underlying litigation.

      The Supreme Court of Ohio has held that, "where the insurer's duty to defend is not

apparent from the pleadings in the case against the insured, but the allegations do state a claim

which is potentially or arguably within the policy coverage, or there is some doubt as to whether

a theory of recovery within the policy coverage had been pleaded, the insurer must accept the

defense of the claim." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180

(1984).  In its reasoning, the court, *id.* at 179, cited the following passage from *Solo Cup Co. v.*

*Federal Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1980):  ". . . especially since the advent of notice

---

    [9]  Likewise, under the CGL coverage part of the West Bend Policy, for the
professional liability coverage extended through the Adult Day Care Professional
Liability Endorsement, "damages" is defined so as to exclude any non-compensatory
damages, such as punitive damages.  ECF No. 27-1 at PageID #: 706.

(4:19CV2654)

pleading, in a case where there is doubt as to whether a theory of recovery within the policy

coverage has been pleaded in the underlying complaint, the insurer must defend, and its defense

obligations will continue until such time as the claim against the insured is confined to a recovery

that the policy does not cover."[10]   As stated above, the Supreme Court of Ohio has never adopted

the heightened pleading standard set out in *Twombly*/*Iqbal*, and the Seventh District Court of

Appeals of Ohio has expressly rejected such a plausibility standard in favor of notice pleading.

*Bahen v. Diocese of Steubenville*, No. 11 JE 34, 2013 WL 2316640, at *3 (Ohio App. 7th Dist.

May 24, 2013).  It remains the law in Ohio that "[o]nly if there is no possibility of coverage

under the policy based on the allegations in the complaint will the insurer not have a duty to

defend the action."  *Erie Ins. Exch. v. Colony Dev. Corp.*, 136 Ohio App.3d 406, 413 (1999)

(citations omitted).

Even when the majority of claims in the complaint in the underlying litigation (ECF No.

1-2) fall under exclusions in the insurer's policy, if any claim is potentially or arguably covered,

then the insurer must defend.  *Id.*  In *Erie*, the court reversed and remanded a finding of summary

judgment in favor of the insurer on a declaratory judgment action about the duty to defend or

---

[10]  In *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108 (1987), the Supreme Court
of Ohio held that when an insurer had agreed to defend only covered claims, and not
"groundless, false, or fraudulent" claims, such as in *Willoughby Hills*, the court could
look beyond the pleadings to determine whether there was a possibility of coverage.  *Id.*
at 114.  The court later clarified that this holding was limited to its facts.  Specifically
when an insurer could demonstrate that the act in question was intentional, and therefore
indisputably outside of coverage, regardless of the theories of liability contained in the
complaint.  *Cincinnati Ins. Co. v. Colelli & Assoc., Inc.*, 95 Ohio St.3d 325 (2002).  *See*
*Am. Chem. Soc. v. Leadscope, Inc.*, No. 04AP-305, 2005 WL 1220746, at *5 (Ohio App.
10th Dist. 2019)  ("even when a policy does not include the 'groundless, false, or
fraudulent' language, the pleadings test in *Willoughby Hills* still applies").

(4:19CV2654)

indemnify.  *Id.* at 409-10.  The underlying complaint asserted that a developer had fallen below the standard of care for a particular condominium association.  Various property damages were alleged to have occurred to the condominium units, common areas, and surrounding landscape including death and damage to trees, excessive erosion, and accumulation of water.  *Id.* at 410. The trial court found that all of the claims fell under various exclusions within the insurer's policy.  A "work performed exclusion" in the policy provided that liability coverage was precluded for "[P]roperty damage to your work arising out of your work or any portion of it."  *Id.* at 415.  Since it was not clear that the damages to the surrounding landscape and trees constituted damage to "your work" – the work of the insured – the exclusion did not necessarily apply to this claim.  The insurer argued that the complaint held no facts to support such an allegation, but the court held that "[the insurer's] obligation to defend the underlying action is governed by the allegations in pleadings not the existence of such evidence."  *Id.* at 416. Regardless of how such factual questions might be answered in the future, the underlying complaint contained claims that were potentially or arguably covered.  The Ohio appellate court held that this was dispositive of the issue and declared that the insurer had a duty to defend.  *Id.* at 416-17.

Factual questions remain unanswered in the case at bar.  At this time, there are still claims in the complaint in the underlying litigation (ECF No. 1-2) that potentially or arguably are covered by the West Bend Policy.  If any claim is even potentially or arguably covered by the West Bend Policy, such would be dispositive of Plaintiff's duty to defend.  Although the complaint (ECF No. 1-2) alleges that Sharita Williams was acting within the scope of her employment at the time of the occurrence, such an allegation is superfluous to a theory of

16

(4:19CV2654)

premises liability. As previously discussed, the auto exclusion would preclude any claim arising

out of Williams' operation of her personal vehicle while acting in the scope of employment. It is

not stipulated and remains in dispute in the underlying litigation whether Williams was acting

within the scope of her employment at the time of Huffman's injury.[11] Until factual issues

pertaining to the allegations of premises liability or the scope of Williams' employment are

resolved, there remains the potential for a covered claim in the underlying litigation.

### C. Premises Liability

Breach of duty can generally be established in a premises liability action when the

plaintiff can prove the following elements: "(1) the defendant, through its officers or employees,

was responsible for the hazard; (2) the defendant had actual knowledge of the hazard and

neglected to promptly remove it or give adequate notice of its presence; or (3) the hazard existed

for a sufficient length of time to reasonably justify the inference that the failure to remove it or

warn against it was attributable to a lack of ordinary care." *Simmons v. Quarry Golf Club,*

*L.L.C.*, 60 N.E.3d 454, 460 (Ohio App. 5th Dist. 2016). Ohio landlords owe a statutory duty to

comply with all applicable housing and safety codes, make all necessary repairs, keep all

common areas of the premises in a safe condition, and maintain in safe working order all

electrical fixtures. *See* Ohio Rev. Code § 5321.04. The complaint in the underlying litigation

(ECF No. 1-2) alleges premises liability, statutory violation, and general allegations which could

---

[11] If Williams were to visit Rae Arc's property on personal business and strike
Huffman as a result of some negligently maintained feature of the property, this would be
just such an occurrence that falls outside of the CGL auto exclusion.

17

(4:19CV2654)

ostensibly speak to each of the elements above.  Specifically, it contains the following

allegations:

> 3.  Upon information and belief, and at all times complained of herein, Defendant, RaeArc Industries, Inc. was an owner, lessee, lessor and/or a party in control of property located at 851 Canfield-Niles Road, City of Austintown, Mahoning County, State of Ohio.
>           \*   \*   \*
> 13.  On or about July 30, 2017, Plaintiff, Bradley Huffman, was a resident, pedestrian, patron or other guest of Defendants, on the premises located at 851 Canfield-Niles Road. . . .
>           \*   \*   \*
> 33.  At all times relevant, Defendants, despite a duty to do so and in violation of statute, negligently failed to maintain their property, causing direct injury to Bradley Huffman, while Mr. Huffman was on premises at property location 851 Canfield-Niles Road. . . .
>
> 34.  Defendants breached such duty in that they failed to ensure Bradley Huffman's safety in that he was struck with the rear of Defendant, Sharita R. Williams' vehicle on Defendants' premises as a result of Defendants' negligence.
>           \*   \*   \*
> 36.  Defendants owed a duty to Bradley Huffman to exercise ordinary care and to protect Mr. Huffman by maintaining the premises in a safe condition.
>           \*   \*   \*
> 38.  Those Defendants knew or should have known that Defendants' actions/inactions, in maintaining and operating such property was a risk to the public.

ECF No. 1-2 at PageID #: 351, 352, 355.

These allegations are currently under consideration by the state court, which, as earlier

indicated, recently denied motions for summary judgment because there remain genuine issues of

material fact.  In dispute are such factual questions as:  (1) whether any hazard on the property

contributed to the accident that injured Mr. Huffman; (2) whether Sharita Williams was acting

within the scope of her employment; and (3) whether any statute was violated in Rae Arc's

(4:19CV2654)

maintenance of the premises.  Such issues are not yet settled as a matter of law.  If they are not

resolved by the parties in the underlying litigation, they will be submitted to a jury for resolution

in state court.  At this time, there is nothing established to preclude a finding of premises liability

as set forth in the complaint in the underlying litigation (ECF No. 1-2).  Although the auto

exclusion would preclude coverage for such a claim if Williams were found to be acting within

the scope of her employment at the time of the occurrence, that factual issue also remains in

dispute.  Until such time that there is no potential for any claim in the complaint (ECF No. 1-2)

to be potentially or arguably covered by the West Bend Policy, Plaintiff has a duty to defend Rae

Arc for all claims in the underlying litigation.  It follows that a determination of Plaintiff's duty

to indemnify is precluded by the same factual issues at this time.

### V.  Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 28) is denied.


IT IS SO ORDERED.


 September 16, 2021                          /s/ Benita Y. Pearson
Date                                    Benita Y. Pearson
                                        United States District Judge